UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SANDY SMITH., JR. #544410     CIVIL ACTION NO. 16-cv-0121

VERSUS     JUDGE FOOTE

KEITH DEVILLE     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

The Shreveport Police Department conducted an investigation that led to the arrest of Sandy Smith Jr. ("Petitioner") on a number of marijuana and firearms charges. Petitioner filed motions to suppress that, after a hearing, were denied. Petitioner eventually pleaded guilty to possession of a firearm by a convicted felon and two counts of possession of marijuana with intent to distribute. He entered the plea pursuant to State v. Crosby, 338 So.2d 584 (La. 1976), which meant he reserved the right to appeal the denial of his motions to suppress. The State dropped the other charges and agreed not to file a multiple offender bill.

Petitioner was sentenced to 15 years on the firearm charge, 30 years on each of the drug charges, and all sentences were ordered to be served concurrently. The convictions and sentences were affirmed on appeal. State v. Smith, 152 So.3d 218 (La. App. 2d Cir. 2014), writ denied, 179 So.3d 597 (La. 2015). Petitioner next filed this federal petition for habeas corpus relief. He asserts several claims related to the denial of his motions to suppress. For the reasons that follow, it is recommended that his petition be denied.

**Background Facts**

Shreveport police responded to a citizen complaint by investigating drug sales at a house on Marjorie Street. Agent Keith Knox fitted a confidential informant ("CI") with a listening device and provided the CI with buy funds. The CI reported to Knox that a black male at the residence who called himself "Smitty" sold the CI marijuana. A field test of the substance was positive for marijuana. The officers used that information to obtain a search warrant for the Marjorie Street house.

No one was home when the search warrant was served. The officers found a significant quantity of marijuana, digital scales, packaging materials, and firearms. They found two pawn tickets on a bedroom dresser near some of the contraband. One ticket was for "Smith, Sandy Jr." and contained a birth date that matched that of Petitioner. The other ticket was for "Smith, Sandy," and it was a renewal of the first ticket. The officers also found legal documents from a federal lawsuit by "Sandy Smith, Jr." against the Caddo Parish Sheriff. The pawn tickets and legal documents provided an address for Smith on Edson Street in Shreveport. The officers also found photos that included Petitioner.

Agent Knox used the information learned in the search of the Marjorie Street house to obtain an arrest warrant for Petitioner. He later obtained a search warrant for the Edson Street house. On the day Knox obtained the search warrant, Petitioner was seen leaving the Edson Street house with a large cardboard box that he put in his car.

Knox directed a K-9 officer, Corp. Christopher Yarbrough, to make a traffic stop of Petitioner and arrest him. Yarbrough testified that he was told to "stop a vehicle and take one into custody that had a warrant with multiple charges on it." Other officers verified to

him that Petitioner was in a Chrysler 300 that Yarbrough began to follow. He did not witness any traffic violations, but he followed Petitioner as Petitioner turned into a gas station parking lot. Corp. Yarbrough was not sure when he turned on his lights, but he didn't think he turned them on until Petitioner was turning into the parking lot. Petitioner parked by a gas pump as if he were about to make a purchase. The officer walked up to Petitioner as he was getting out of the Chrysler, patted him down, and handcuffed him.[1]

Yarbrough said, "I always walk my dog around cars for whatever reason I'm stopping someone, because I have that right given to me by the federal courts." Accordingly, K-9 Mico was walked around Petitioner's car, and the dog alerted on the driver's door. The dog then entered the car and alerted on a box in the back seat. A search of the box revealed 14 1/2 pounds of packaged marijuana. Petitioner had $895 of cash on his person, and there was $400 found in the back seat. Police executed the search warrant for the Edson Street house, where they located more marijuana under the bed in the master bedroom, as well as two handguns and ammunition.

Retained attorney J. Ransdell Keene enrolled for Petitioner and filed a motion to suppress the search of the car for lack of permission or a search warrant applicable to the car. Keene later filed a supplemental motion to suppress that argued the affidavit in support of the arrest warrant included intentional false statements. He asserted that the court should suppress all evidence obtained after Petitioner's arrest.

---

[1] An arrest warrant, specific and reliable tip, or a wanted flyer from another agency may provide lawful cause to conduct a traffic stop, even if the officer does not observe a traffic violation or other offense. Navarette v. California, 134 S.Ct. 1683 (2014); U.S. v. Hensley, 105 S.Ct. 675 (1985).

Judge Craig Marcotte presided over a lengthy hearing on the motions to suppress. Agent Knox testified about the investigation, and Attorney Keene cross-examined him about the alleged false statements in the arrest warrant affidavit, the lack of recording of the CI purchase, the proper handling of the buy funds used in that transaction, and the accuracy of the assertion in the arrest warrant affidavit that Petitioner had a "violent criminal history." Keene also cross-examined Corp. Yarbrough about matters including the basis for the traffic stop and his intention to search the car.

Judge Marcotte gave detailed reasons for denying the motions. With respect to the search warrant for the Marjorie Street house, he noted that "Mr. Keene did a very good job of cross-examining the agent in this case, and Agent Knox appeared to have gotten either flustered or frustrated." But the court found that Knox was credible despite being flustered. Judge Marcotte, who signed all the warrants related to the case, said that it appeared the agent "may have been a little broad or a little far reaching" in his description of Petitioner's criminal history, but he did not think there was any actual misrepresentation. The judge stated that whether a person has prior arrests or convictions "doesn't mean a whole lot to me" as to whether a particular search or arrest warrant will be issued. "I go on the facts that they've got." And he found that those facts were sufficient to support the warrants. Turning to the search of the vehicle, the judge said he did not think there was any question that the stop was pretextual in the sense that there was no traffic violation, and the K-9 officer was called in specifically to stop the car. But there was a valid arrest warrant for Petitioner that would allow any law enforcement officer to arrest him. The dog then alerted on the car, which allowed the officers to search it. The judge added that the officers likely

could have performed an inventory search after seizing the car, which would likely happen since the car was parked next to the pumps at a gas station when the arrest was made. Tr. 451-59.

Mr. Keene was allowed to reopen the suppression hearing the next month, after he did not receive copies of the alleged buy funds during discovery. A copy of the currency was produced on the day of the supplemental hearing, and Agent Knox was recalled to the stand to be questioned about the funds. Knox testified that the buy money was never recovered after the sale in this case, something that he said was very common. Judge Marcotte pointed out that Petitioner was not charged with distribution based on the sale to the CI at the Marjorie Street home, and he again denied the motion to suppress. Tr. 465-75.

Mr. Keene later withdrew as counsel, and the court appointed James Andes. Petitioner filed a pro se motion for a <u>Franks</u> hearing, which the judge denied because the suppression issues had already been ruled upon. Petitioner later demanded to represent himself, with Mr. Andes as standby counsel. Petitioner filed a number of motions, including a motion to compel production of the CI's identity. Petitioner argued that testimony from the CI could favor him because the CI did not identify him as the seller in the Marjorie Street transaction, and Petitioner contended that the CI's story was not credible because the amount of money he allegedly spent for the quantity of marijuana obtained was too high for the market. The judge denied the request for lack of any compelling reason to disclose the CI's identity, especially in light of the fact that Petitioner

was not charged with a crime based on the Marjorie Street transaction with the CI. Tr. 521-25, 535-38.

Petitioner later requested to again reopen the motion to suppress. He argued that the police department had no record of the 14 grams of marijuana allegedly purchased by the CI on Marjorie Street, which he argued meant that Agent Knox had committed perjury in his affidavits and at the hearing. The judge said that he had already conducted a five-hour hearing and was not going to reopen the motion to suppress, but Petitioner could cross-examine Knox at trial. Tr. 577-81. Just as the jury was about to enter the courtroom, Petitioner agreed to a plea bargain, with the reservation of his right to appeal the decisions to deny his motions to suppress. Tr. 581-93.

Appellate counsel filed a brief in support of direct appeal and challenged the lawfulness of the search warrant for Edson Street, the arrest warrant, and the search of Petitioner's car. Tr. 623-43. Petitioner filed a pro se brief and listed several assignments of error related to the suppression issues, as well as claims of ineffective assistance of counsel. Tr. 660-709. Those arguments are substantially similar to the ones presented in the federal habeas petition. The state appellate court addressed the claims in a reasoned opinion, and aspects of that reasoning will be discussed below where relevant.

**Fourth Amendment Claims**

Petitioner's habeas petition lists eight claims, four of which are direct challenges to the state court's refusal to suppress evidence that Petitioner believes was gathered in violation of the Fourth Amendment. Those claims can be summarized as follows:

- The trial court erroneously denied suppression of evidence that was obtained by fraud upon the court in violation of the Fourth Amendment.

- The affidavit in support of the search warrant for the Marjorie Street house lacked probable cause and was based upon knowing use of perjured and false statements.

- Petitioner's arrest pursuant to a warrant was based on what an unknown CI said and would not have issued but for false statements.

- The stop of Petitioner's car and search violated Petitioner's rights under the Fourth Amendment.

A federal habeas court is generally barred from reviewing Fourth Amendment claims. Stone v. Powell, 96 S.Ct. 3037 (1976). In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 96 S.Ct. at 3037. To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. Stone bars federal habeas consideration of that claim whether or not the defendant employs those available processes. Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). The bar also applies to a petitioner who has entered a conditional guilty plea that allowed him to challenge Fourth Amendment suppression rulings on appeal.[2]

---

[2] Subject to a few exceptions, a petitioner who has pleaded guilty may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Class v. United States, 138 S. Ct. 798, 803 (2018); Tollette v. Henderson, 93 S.Ct. 1602, 1608 (1973). A Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty because of "the simple

The Stone bar against habeas review is routinely applied to Fourth Amendment claims of unlawful search, such as the argument in Janecka that a detective recovered the murder weapon and other evidence during an unlawful search of a residence that was made without a warrant or consent. Id., 301 F.3d at 320. The bar also applies to claims of unlawful arrest and evidence gathered in connection with the arrest. The Petitioner in Stone was arrested for violating a vagrancy ordinance and found in possession of a murder weapon. He argued that the vagrancy ordinance was unconstitutional and that the arresting officer lacked probable cause for arrest, but those claims were deemed barred on collateral review. The Fifth Circuit has invoked Stone to bar habeas review of arrest-related claims in cases including Guy v. Whitley, 8 F.3d 21 (5th Cir. 1993), Avery v. Procunier, 750 F.2d 444, 448 (5th Cir. 1985), and Swicegood v. State of Ala., 577 F.2d 1322, 1323 (5th Cir. 1978). Stone also forecloses habeas review of arguments under Franks v. Delaware, 98 S.Ct. 2674 (1978) that there were deliberate misstatements of material facts in an affidavit necessary to support issuance of a warrant. Smith v. Maggio, 664 F.2d 109 (5th Cir. 1981); Henderson v. Director, 2007 WL 2021343, *3 (E.D. Tex. 2007).

---

fact that the claim is irrelevant to the constitutional validity of the conviction," which is the issue on habeas review. Haring v. Prosise, 103 S. Ct. 2368, 2377 (1983).
 When a conditional plea, such as the Crosby plea entered in this case, allows a defendant to challenge a suppression ruling on appeal in state court then he may also challenge the suppression ruling in a habeas petition. Lefkowitz v. Newsome, 95 S.Ct. 886 (1975). But Stone distinguished Lefkowitz to the extent it includes Fourth Amendment claims by a habeas petitioner who was afforded an opportunity to litigate the claims in state court. Stone, 96 S.Ct. at 3045 n. 14; Brock v. Cain, 2018 WL 2171479 (W.D. La. 2018) (collecting cases). Thus, a prisoner who enters a conditional guilty plea, or Crosby plea, may be able to challenge some suppression rulings in a habeas petition, but Fourth Amendment challenges are still subject to Stone's bar on habeas review.

Whether an argument is directed at the final ruling on a Fourth Amendment claim or evidentiary issues or other rulings that took place during a suppression hearing, all such matters are beyond habeas review under the Stone doctrine. Even if a claim is labeled one for use of "false evidence," a Brady claim, or other claim that is ordinarily cognizable on habeas review, Stone bars consideration if the evidence complained of was sought for use in litigating a Fourth Amendment claim. O'Quinn v. Estelle, 574 F.2d 1208 (5th Cir. 1978) (Brady claim based on refusal to identify known drug users whose presence led to obtaining warrants barred by Stone); Brock, 2018 WL 2171479 at *3 (claim that State used altered video evidence at suppression hearing barred by Stone).

The Stone bar is fully applicable to Petitioner's Fourth Amendment claims. Louisiana law provides an opportunity for a full and fair litigation of Fourth Amendment claims, and Petitioner took full advantage of that process. He had an evidentiary hearing and received detailed reasons from the trial court for the denial of his motion. He then litigated the issues on appeal, after which the appellate court issued a reasoned opinion. The federal court is now barred from considering his Fourth Amendment arguments on habeas review. The State raises procedural bar and other defenses to some of these claims, but they need not be addressed in light of the recommended resolution.

**Identity of Confidential Informant**

    **A. Introduction**

Two of Petitioner's habeas claims argue that the prosecutor and state court denied him due process in connection with his suppression hearing by denying his request that the prosecution be required to identify the CI. Petitioner argues that he could have confronted

and cross-examined the CI at the suppression hearing and impeached his version of the events. The State argues that the claims are subject to the Stone bar, procedurally defaulted, and lack merit.

### B. Stone Bar is Applicable

The claims are barred by Stone, as applied in O'Quinn, 574 F.2d at 1208-09. The petitioner in O'Quinn complained that the prosecution "refused to reveal the identity of 'known narcotics users' whose alleged presence at O'Quinn's residence was relied upon by the State in securing the search warrant which led to his arrest." The district court granted relief, reasoning that O'Quinn's claim was based on the prosecution's duty to disclose exculpatory information, which under Brady arises out of the due process guaranty of a fair trial, not the search-and-seizure clause of the Fourth Amendment. The Fifth Circuit reversed. It explained that O'Quinn's constitutional claim was ultimately based on the Fourth Amendment because the identities of the known narcotics users were "useful to him only in an attack on the probable cause predicate of the search warrant that ultimately yielded the damning narcotics." Id. at 1209-10. Thus, O'Quinn's habeas claim was barred by Stone. The same is true here. Petitioner's claims regarding the identity of the CI seek only to uncover evidence that might have been helpful in litigating the Fourth Amendment issues, so the claims are barred.

### C. Procedural Bar

The state appellate court acknowledged that Petitioner raised several pro se assignments and arguments in which he complained that the trial court refused to disclose the CI's identity. The appellate court stated that the Crosby plea had preserved only the

right to appeal the denial of the motion to suppress, so the CI issues were not preserved for appeal. The court added that, even assuming the issues had been preserved, "[W]e find that the defendant failed to show exceptional circumstances which would require divulging the CI's identity." State v. Smith, 152 So.3d at 223.

The State represents that Petitioner, despite raising the CI issues repeatedly before the appellate court, failed to do so at all in his petition to the Supreme Court of Louisiana. That petition raised a number of assignments of error/issues, but none of them specifically complain of the nondisclosure of the identity of the CI. Tr. 792, 797-98.

An application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Proper exhaustion requires presenting a claim to the state supreme court in a petition for discretionary review. O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999). It is now too late, given Louisiana's two-year limitations period in La. C.Cr.P. art. 930.8, to timely exhaust the claims in state court. They are, therefore, considered technically exhausted but subject to a procedural bar to review in federal court absent the demonstration of cause for the default and actual prejudice as a result. Woodfox v. Cain, 609 F.3d 774, 793 (5th Cir. 2010); Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998) . Petitioner has not demonstrated cause for his failure to include these claims in his petition for discretionary review. He filed his writ application *pro se*, so has no one to blame but himself for the omission of the claims. They are procedurally barred.

**D. Lack of Merit**

The claims also lack habeas merit. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

The prosecution has an informer's privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. Roviaro v. U.S., 77 S.Ct. 623 (1957). The privilege is not absolute, and the identity of the CI may have to be disclosed if a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense weighs in favor of disclosure. Id. See U.S. v. Ortega, 854 F.3d 818, 824 (5th Cir. 2017); State v. Lewis, 188 So.3d 1040 (La. 2016).

The trial judge gave a reasonable explanation for why the request to disclose the CI's identity was denied. The need for disclosure was particularly weak in this case because Petitioner was not charged with a crime in which the CI participated. The CI's role was relevant only to gathering information that led to obtaining a search warrant for a house. The appellate court agreed that the circumstances did not require divulging the CI's identity. When a state court has denied a claim on the merits, the AEDPA bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam). The state court's decision was a reasonable application of the principles established in Roviaro, so Petitioner has not satisfied the demanding standard for habeas relief.

**Ineffective Assistance of Counsel**

Petitioner's final two claims assert that trial counsel was ineffective for failing to properly challenge the search warrants and supporting affidavits. He also charges that counsel failed to properly investigate "the nature and reasons for the search warrants and my arrests" and file appropriate pleadings, which resulted in an ill-advised guilty plea. Counsel's ineffectiveness, if proven, is a basis for vacating a conviction only if there is a reasonable probability it made a difference to the outcome of the proceeding. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Because Petitioner pleaded guilty, to show this prejudice he must demonstrate that but for counsel's error, he would have insisted on going to trial. Hill v. Lockhart, 106 S.Ct. 366 (1985); Young v. Spinner, 873 F.3d 282, 285 (5th Cir. 2017).

Petitioner's ineffective assistance claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). "If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

Petitioner lists his ineffective assistance claims as numbers six and seven, but they are argued under number eight in his memorandum. That memorandum provides little more in the way of factual support than is found in the above summary of the claims. Petitioner argues that counsel should have investigated the reasons for the investigation of the Marjorie Street house and then filed appropriate motions to quash and suppress. He also complains that counsel refused to call Lieutenant McFarland of Internal Affairs "who would have testified that the reports by Agent Knox were false."

Judge Marcotte noted more than once that Mr. Keene had thoroughly cross-examined witnesses on various issues. The appellate court stated that its review of the record showed that counsel "vigorously and zealously litigated the defendant's motions to suppress," and the trial court had "strongly commended defense counsel's performance, and we find that this praise was well deserved." State v. Smith, 152 So.3d at 229. Insofar

as Petitioner blamed counsel for an ill-advised plea, the court pointed out that Petitioner had by then demanded to represent himself, and it was he who chose to enter the plea bargain rather than face the jury that had been assembled. Id.

Petitioner's conclusory assertions of ineffective assistance of counsel are insufficient to overcome the demanding habeas requirements. Counsel obviously investigated the suppression issues, filed an appropriate motion, and thoroughly questioned the relevant witnesses. Petitioner argues that counsel should have called an internal affairs officer, but he provides scant information as to what that officer might have provided. Claims that counsel did not call a certain witness are not favored, and the Petitioner must demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the proposed testimony, and showing that the testimony would have been favorable to a particular defense. Woodfox, 609 F.3d at 808. Petitioner has not met his burden. He is not entitled to habeas relief on any of his ineffective assistance of counsel claims.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of February, 2019.



Mark L. Hornsby
U.S. Magistrate Judge